***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above. The administrator is Claims Management, Inc.
4. Plaintiff's average weekly wage is $227.52, which yields a compensation rate of $151.69.
5. Plaintiff alleges she sustained an injury on or about March 3, 2007, with the exact date to be determined by the Industrial Commission.
6. The cervical spine injury arose out of and in the course of employment and is compensable.
7. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Pre-Trial Agreement;
 • Exhibit 2: A paginated set of exhibits including Industrial Commission forms, medical records, discovery responses, personnel records, payroll records, attendance records, (220 pages — pages 37, 38, and 39 were intentionally deleted by the parties);
 • Exhibit 3: Defendant-employer's attendance policy;
 • Exhibit 4: Additional attendance records;
 • Exhibit 5: Plaintiff's medical records — Coastal Rehabilitation Medicine Associates;
 • Exhibit 6: Employment Security Commission records; and *Page 3 
 • Exhibit 7: Plaintiff's medical records — Dr. Robert Benjamin (dermatologist).
8. Plaintiff's issue for determination by the North Carolina Industrial Commission is whether plaintiff is entitled to temporary total disability compensation from April 14, 2008 to the present and continuing.
9. Defendants' issues for determination by the North Carolina Industrial Commission are as follows:
 (a) Whether plaintiff is entitled to disability benefits following her termination for cause on April 15, 2008?
 (b) If so, whether defendants are entitled to a credit against any indemnity compensation owed for unemployment benefits received by plaintiff?
 (c) Whether plaintiff's current symptoms are causally related to the alleged work injury?
 (d) Whether plaintiff is currently suffering from a reduction in wage-earning capacity, and if so, whether such reduction is due to her alleged work condition or rather is due to other pre-existing or post-developing conditions and syndromes?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 43 years of age. Plaintiff completed the eighth grade of her education. Prior to working for defendant-employer, *Page 4 
plaintiff had experience in housekeeping, commercial cleaning, restaurant services, working as a painter's helper, and working as a retail cashier and stocker.
2. On January 17, 2007, plaintiff commenced work as a produce sales associate with defendant-employer. As defendant-employer was in the process of opening a new store, plaintiff spent the majority of her time stocking, cleaning, putting up racks, and performing other tasks assigned to prepare the store for opening.
3. On March 3, 2007, plaintiff sustained an injury at work when she bent over to lift a case of popcorn. Plaintiff experienced a pop in her neck, ringing in her ears, and pain in her neck and left shoulder. Plaintiff completed her shift and returned home. Plaintiff testified that she thought she was just tired from all the stocking she did over the last several days, and that her pain would subside once she went home and rested through the night.
4. On March 6, 2007, plaintiff reported the March 3, 2007 work injury to defendant-employer and completed an accident report. That same day, plaintiff presented to Dr. Robert J. Kastner, a family practitioner at Med Care, with complaints of pain in her left shoulder, arm, and neck after lifting stock. Plaintiff was diagnosed with left trapezius pain and a possible strain of her thoracic back and neck areas. Plaintiff was assigned modified duty of no lifting over 20 pounds, no reaching overhead, and no climbing.
5. As plaintiff's symptoms of neck pain with left arm radiculopathy continued, Dr. Kastner subsequently referred her for physical therapy and continued her work restrictions.
6. On April 26, 2007, although plaintiff complained of being sore after working hard and experiencing tingling in her left index finger, she felt she was improving. As a consequence, Dr. Kastner released plaintiff to full-duty work with no restrictions. *Page 5 
7. However, plaintiff continued to experience neck pain and continued to present to Med Care, for treatment of her symptoms. On May 25, 2007, plaintiff was assigned restrictions of no lifting more than 10 pounds, no overhead reaching, and subsequently, no climbing. Plaintiff was referred to Dr. George A. Alsina, a neurosurgeon, for further evaluation and treatment.
8. On June 11, 2007, plaintiff underwent an MRI, which revealed disc osteophyte complex causing central and neuroforaminal narrowing at C5-6, C6-7, and a small left paracentral disc bulge at C4-5. Dr. Alsina referred plaintiff to Dr. Sunil K. Arora for pain management since conservative therapy had not provided relief and oral steroids only had a transient effect.
9. On July 17, 2007, plaintiff presented to Dr. Sunil K. Arora, an anesthesiologist and pain management specialist. Dr. Arora recommended cervical traction, oral medications, and a series of steroid injections. Dr. Arora performed a series of epidural steroid injections at C5-6; however, they did not provide significant relief.
10. Plaintiff continued working for defendant-employer and a performance appraisal on October 29, 2007 indicated that plaintiff met expectations in all areas except for attendance.
11. Plaintiff continued to present to Dr. Arora until February 21, 2008, when he released her from his care for violating their pain management contract, as alcohol appeared in her drug screening test.
12. On April 14, 2008, plaintiff presented to Coastal Rehabilitation Medicine Associates, a practice of physical medicine and rehabilitation specialists, for continued pain management treatment. Erica Christensen, a physician's assistant with the practice, increased *Page 6 
plaintiff's dose for her prescription of Lyrica, prescribed a pneumatic traction unit, and scheduled plaintiff for an interlaminar injection at C6.
13. Since plaintiff's March 3, 2007 work injury, she continued to work in her regular position in the produce department. In order to accommodate plaintiff's work restrictions, defendant-employer advised plaintiff to request assistance in the event she was unable to perform her regular duties. Plaintiff testified that she provided a supervisor, Ms. Terri Shadid, with her work restrictions from her physicians and also took them to defendant-employer's personnel office.
14. The job description of a produce sales associate, which was received into evidence, requires "moving up and down a ladder, frequently lifting, sorting, carrying and placing merchandise and supplies of varying sizes weighing up to 50 pounds without assistance and over 50 pounds with team lifting." Plaintiff testified, and the Full Commission finds as fact, that she regularly exceeded her lifting restrictions. Plaintiff testified that although she was advised to ask for assistance when a task exceeded her restrictions, many times there would be no one available to assist her. On occasion, plaintiff was assigned cleaning duties to accommodate her physical limitations.
15. Ms. Jamie Murphy, plaintiff's supervisor from late September 2007 until April 15, 2008, testified at the hearing that she was given no information or instructions from her supervisors or anyone in management regarding accommodation of plaintiff's restrictions. The only knowledge Ms. Murphy had of plaintiff's injury or any limitations came from what plaintiff told her.
16. Plaintiff felt she was expected to perform her job duties, including keeping the departments clean, keeping the produce stocked, and serving customers. Plaintiff climbed a *Page 7 
ladder daily and was required to regularly lift boxes and bins, and to bend and stoop in order to perform her duties.
17. According to defendant-employer's policy, if an employee has an unexcused absence from work and fails to meet any of the options laid out in the absence reporting policy, the absence is considered a "no call/no show" absence. An employee is immediately subject to written coaching discipline for a "no call/no show." Three "no call/no show" absences in a rolling six-month period would lead to termination.
18. Plaintiff had multiple unexcused absences throughout March 2008, and finally had a "Level IV Coaching" resulting in termination for these absences. Plaintiff's termination was effective on April 15, 2008. The termination paper indicated that plaintiff's termination was "involuntary;" however, she was recommended for re-hire.
19. On April 22, 2008, plaintiff underwent a C6-7 interlaminar fluoroscopic-guided epidural steroid injection, which only provided temporary relief.
20. On October 20, 2008, plaintiff presented to Dr. Kastner with complaints of continued neck and thoracic back pain but requested that Dr. Kastner change her work restriction of no lifting more than 10 pounds to 25 pounds, as she was having difficulty obtaining employment with the higher restriction.
21. On December 23, 2008, plaintiff presented to Dr. Francis S. Pecoraro, a pain medicine and physical rehabilitation specialist. Dr. Pecoraro diagnosed plaintiff with cervical degenerative disc disease with a history of upper limb radicular pain and treated her conservatively. *Page 8 
22. Dr. Pecoraro opined to a reasonable degree of medical certainty that plaintiff's ongoing problems were causally related the March 3, 2007 work injury, and that there was no indication plaintiff was exaggerating her symptoms or abusing her pain medication.
23. Dr. Pecoraro opined that plaintiff's symptoms soon after her March 3, 2007 work injury were similar to what she complained of when she first presented to him. At plaintiff's first visit to Dr. Pecoraro on December 23, 2008, she complained of neck and interscapular pain radiating into both arms and some hand numbness. Based on plaintiff's presentation, clinical findings, and his training as a board-certified disability analyst, Dr. Pecoraro opined that as of plaintiff's first visit, she was not able to perform even sedentary work or compete in the open labor market.
23. Upon referral from Dr. Pecoraro, plaintiff presented to Dr. Mark Rodger, an orthopedic surgeon, on May 28, 2009. Dr. Rodger referred plaintiff for a CT myelogram of the cervical spine to further evaluate plaintiff. After review of the results of this CT myelogram, he recommended surgical distractive releases at C5-6 and C6-7 to help relieve plaintiff's symptoms.
24. When Dr. Rodger was asked to provide his opinion on causation, he opined that plaintiff's complaints are essentially the same now as they were when she presented to Dr. Alsina in June of 2007, and that he would say, more likely than not, that the condition for which he was treating plaintiff is the same condition that she had back in 2007.
25. Plaintiff continues to treat with Dr. Pecoraro and defendants have authorized the surgical distractive releases at C5-6 and C6-7.
26. The facts leading to plaintiff's termination on April 15, 2008 are contested. Plaintiff testified that she missed time from work to attend medical appointments related to her compensable injury and because of neck pain. Defendants contend that plaintiff's termination *Page 9 
was unrelated to her work injury and based on plaintiff's failure to either report for work when assigned or notify defendant-employer that she would not be able work. Based on the greater weight of the evidence, the Full Commission finds that plaintiff's termination was based on actions for which a non-disabled employee would ordinarily be terminated. As a consequence, plaintiff's termination constitutes a constructive refusal to perform the work provided.
27. Since plaintiff's termination, she testified that she sought employment as a cashier, store clerk, and sales clerk, but was unable to secure a position within her work restrictions. Plaintiff testified that she made verbal inquiries and personally visited some employers that she knew personally, but did not submit any applications. Plaintiff also used the Employment Security Commission job listings and those in the newspaper to seek employment. Plaintiff's job search efforts, however, did not begin until after she returned from a trip to Georgia on October 15, 2008. Therefore, the Full Commission finds as fact that plaintiff has not proven disability from April 15, 2008 through on or about October 26, 2008, when she filed a claim for unemployment compensation and began to search for work within her restrictions.
28. The greater weight of the evidence reveals and the Full Commission finds that after plaintiff's termination on April 15, 2008, she was capable of some work and made reasonable, but unsuccessful efforts to find other employment beginning on or about October 26, 2008. Plaintiff asked Dr. Kastner to change her work restrictions from a 10 pound lifting limitation to a 25 pound lifting limitation to increase her opportunity to find employment. Accordingly, plaintiff's inability to find other employment at wages comparable to those earned prior to the injury is due to her work-related disability.
29. There is a substantial risk of the necessity of future medical compensation for plaintiff's spine. *Page 10 
30. After plaintiff's termination on April 15, 2008, she filed for unemployment benefits with the Employment Security Commission, and was approved for $151.00 per week, commencing the week of November 3, 2008.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 3, 2007, plaintiff sustained an admittedly compensable injury by accident to her cervical spine, arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. An employee's termination from employment that is attributable to plaintiff's misconduct, unrelated to the compensable injury, for which a non-disabled employee would ordinarily be terminated, constitutes a constructive refusal to perform the work provided.Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
3. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that her inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Seagraves v. AustinCo. of Greensboro, supra.
4. In the present case, the greater weight of the evidence shows that after plaintiff's termination on April 15, 2008, she was capable of some work and made a reasonable, but unsuccessful effort to find other employment beginning on or about October 26, 2008.Demery v. Perdue Farms, Inc.,142 N.C. App. 259, 545 S.E.2d 485 (2001). Plaintiff has carried her burden that she was disabled from employment due to her compensable injury beginning on or *Page 11 
about October 26, 2008, and continuing. N.C. Gen. Stat. § 97-29; Seagraves v. Austin Co. ofGreensboro, supra.
5. As a direct and proximate result of plaintiff's compensable March 3, 2007 work injury, plaintiff has been unable to earn the same or greater wages as she was earning in the same or any other employment. As a result, plaintiff is entitled to receive ongoing temporary total disability compensation at the rate of $151.69 per week, commencing October 26, 2008 and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
6. As a direct and proximate result of plaintiff's compensable March 3, 2007 work injury, plaintiff is entitled to all medical expenses incurred or to be incurred for her cervical spine injury for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
7. Pursuant to N.C. Gen. Stat. § 97-25.1, there is a substantial risk of the necessity of future medical compensation for plaintiff's spine.
8. Defendants are entitled to a credit for unemployment benefits paid to plaintiff. N.C. Gen. Stat. § 97-42.1
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay to plaintiff temporary total disability compensation at a rate of $151.69 per week commencing October 26, 2008 and continuing until further Order of the Industrial Commission, subject to a credit for the *Page 12 
unemployment benefits received during the same period. Compensation that has accrued shall be paid in a lump sum, also subject to the attorney's fee, approved below.
2. Defendants shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident to her cervical spine, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraph One of this Award is approved for plaintiff's counsel and shall be paid by defendants as follows: twenty-five percent of any compensation which has accrued shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the ___ day of December 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1